## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PERINI/TOMPKINS JOINT VENTURE and
GILFORD CORPORATION,

        Plaintiffs,                        CASE NO. 12-10234
                                           HON. LAWRENCE P. ZATKOFF

v.

COMERICA BANK,

        Defendant.
_____/

### OPINION AND ORDER

        AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on the 12th day of September, 2012

        PRESENT:    THE HONORABLE LAWRENCE P. ZATKOFF
                          UNITED STATES DISTRICT JUDGE

### I.  INTRODUCTION

        This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint

Pursuant to Rule 12(b)(6) (Docket #3).  Plaintiffs filed a response, and Defendant filed a reply.  The

Court finds that the facts and legal arguments pertinent to the motions are adequately presented in

the parties' papers, and the decision process will not be aided by oral arguments.  Therefore,

pursuant to E.D. Mich. Local R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on

the briefs submitted by the parties, without this Court entertaining oral arguments.  For the reasons

that follow, Defendant's motion is granted in part and denied in part.

## II. BACKGROUND

In deciding Defendant's Rule 12(b)(6) Motion, the Court assumes for purposes of this Opinion and Order that the allegations set forth in Plaintiff's complaint are true.

Plaintiffs filed this case seeking to recover amounts that they claim Defendant offset as a secured creditor of non-party MSW-Morgan Group, LLC ("MSW"). Plaintiffs are judgment creditors of MSW under two judgments they obtained in Maryland state court. Plaintiffs state that their judgments arise "out of a contractor subcontractor" relationship between Plaintiffs and MSW "on Phase I (Perini/Tompkins) and Phase II (Gilford) of a hotel construction project for [non-party] Gaylord National Corporation in Oxon Hill, Maryland."  MSW was a subcontractor to both Plaintiffs.  Defendant "was the principal lender to [MSW] and held a security interest in all of [MSW's] assets."  Plaintiffs do not allege that either of them had any relationship with Defendant.

Plaintiffs allege that: "[d]uring 2007, it became clear to Defendant that [MSW] was in severe financial distress and [Defendant's] loan was in jeopardy." Plaintiff state: "From that point forward," Defendant took over control of MSW's business operations and "made the strategic decision to keep [MSW] in business for the sole purpose of collecting as much of its accounts receivable as possible . . . ."  According to Plaintiffs, Defendant's goal was to "liquidate [MSW] by seizing all of its assets under the auspices of its security interest" as a secured lender.

During the period of "April – August 2008," the owner of the Gaylord project "issued three (3) checks jointly to the Plaintiffs and [MSW] totaling $2,301,818.00."  Plaintiffs endorsed these checks to MSW.  Plaintiffs allege that MSW did not "return to the site to complete the punchlist" and did not use the funds provided by Plaintiffs (and owner of the Gaylord project) to "commence[] remedial punchlist work" because Defendant exercised its rights as a secured creditor and applied

2

the contract payments to MSW's indebtedness to Defendant.

As a result of Defendant's application of those funds, "Plaintiffs [claim they] were required to complete and correct [MSW's] work [on the project] at an additional cost . . . of $1,982.592.00." Moreover, because of MSW's "false representations," Plaintiffs claim that Plaintiff Perini/Tompkins Joint Venture overpaid MSW for extra work MSW allegedly performed to repair damage caused by others in the amount of $2,000,092. Plaintiffs also claim that Defendant "took and retained" these amounts "for its own benefit or otherwise caused [MSW] to direct those contract funds to other projects." The Circuit Court for Prince George's County, Maryland—confirming arbitration awards—granted judgments in favor of Plaintiff Perini/Tompkins Joint Venture and Plaintiff Gilford Construction on March 8, 2011, and March 18, 2011, respectively. The Maryland court dismissed all of MSW's claims against Plaintiffs, with prejudice. Plaintiffs domesticated those judgments in Oakland County Circuit Court on October 12, 2011.

Plaintiffs now look to Defendant to satisfy their judgments against MSW. Plaintiffs filed their complaint in the Oakland County Circuit Court on December 23, 2011. Their complaint alleges: (1) violations of the Michigan Builder's Trust Fund Act, M.C.L. § 570.151 *et seq.* (the "Act") (Count I), (2) lender liability (Count II), and (3) tortious interference with Plaintiffs' contracts (Count III). Defendant removed this action and filed the Motion to Dismiss as its initial response to Plaintiffs' complaint.

## III.  LEGAL STANDARD

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a plaintiff's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in the plaintiff's favor.

3

*See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992).  While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions.  *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999).  A plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct."  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 696-97 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice."  2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000).  If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56.  *See* Fed. R. Civ. P. 12(d).

## IV.  ANALYSIS

### A.    Claim Pursuant to the Michigan Builder's Trust Fund Act (the "Act")

Defendant first argues that the Act is inapplicable against Defendant because the project was located in Maryland.  Defendant relies, in part, on another decision from Eastern District of Michigan, *Accu-Tech Corp. v. Jackson*, 352 F. Supp. 2d 831 (E.D. Mich. 2005) (Edmunds, J.).[1] Contrary to Defendant's interpretation of the *Accu-Tech* opinion, however, the *Accu-Tech* court did

---

[1]Of course, *Accu-Tech Corp.* is not binding precedent on this Court.

4

not address whether the alleged misappropriation of contract funds in Michigan (without any projects in Michigan) would implicate the Act; rather, the *Accu-Tech* court ultimately determined that the parties' contacts in Michigan were sufficient to implicate the Act.

Like the *Accu-Tech* court, this Court finds that "[t]he location of the project is not relevant . . . to the conducted regulated by the [Act] – the focus of which statute is on the collection and misuse of construction funds and not, for instance, on construction site safety." *Id.* at 837. As the statutory language makes clear, the focal point of the Act is the mishandling of construction funds. *Id.*; M.C.L. § 570.152. Thus, the Act "imposes a 'trust' upon the building contract fund paid by any person to a contractor or subcontractor for the benefit of the person making the payment, contractors, laborers, subcontractors and materialmen." *In re Johnson*, 691 F.2d 249, 252 (6th Cir. 1982).

To establish a civil claim under the Act, a plaintiff must prove:

(1)     the defendant is a contractor or subcontractor engaged in the building construction industry,

(2)     a person paid the contractor or subcontractor for labor or materials provided on a construction project,

(3)     the defendant retained or used those funds, or any part of those funds,

(4)     for any purpose other than to first pay laborers, subcontractors, and materialmen, and

(5)     the laborers, subcontractors, and materialmen were engaged by the defendant to perform labor or furnish material for the specific project.

*DiPonio Constr. Co. v Rosati Masonry Co.*, 246 Mich.App. 43, 49 (2001). As set forth in *Accu-Tech*, "[n]o element in plaintiff's prima facie civil claim explicitly requires an event or party to be affiliated with Michigan. . . Clearly, however, . . . [t]he Michigan legislature must have intended some connection to the state." *Accu-Tech*, 352 F.Supp.2d at 836.

5

In this case, the Court finds the connections to the State of Michigan sufficient to implicate the Act.  Specifically, Plaintiffs have alleged that: (1) MSW is a Michigan limited liability company, (2) MSW had a banking relationship with Defendant in Michigan, which relationship included a secured loan extended from Defendant to MSW, (3) Plaintiffs endorsed checks to MSW "for the purpose of providing [MSW] sufficient funds to complete the punchlist (remedial work)" on the Gaylord hotel project, and (4) MSW maintained the funds from those checks in an account with Defendant at a bank operated in Michigan.  The Court also notes that Defendant is a banking corporation with a long history of maintaining a significant presence in Michigan, a presence which continues to this day.

The Court also finds that Plaintiff has alleged all five *DiPonio* elements necessary to establish a civil claim under the Act:

      (a)     MSW is a subcontractor engaged in the building construction industry (first element);

      (b)     Plaintiffs paid MSW (*i.e.*, the checks endorsed to MSW by Plaintiffs) for the purpose of completing the punchlist on the Gaylord hotel project (second element);

      (c)     MSW retained those funds (third element); and

      (d)     MSW did not use the funds to first pay laborers, subcontractors, or materialmen who were engaged by MSW to perform labor or furnish material for the Gaylord hotel project (fourth and fifth elements).

Thus, pursuant to the Act, the Court concludes that, if Plaintiff's allegations are proven, MSW "held funds given it by [P]laintiffs merely as a trustee to the extent that [P]laintiffs' payment to [MSW] exceeded the value of the . . . construction work performed." *Blair v. Trafco Prods., Inc.*, 142 Mich.App. 349, 355 (1985).  Therefore, if it is determined that MSW held such funds merely as a trustee, Defendant would have had no right to apply those construction funds to MSW's

indebtedness to Defendant. *Id.* at 354.

Defendant also argues that the Act is inapplicable in this case because: (1) Defendant is not a contractor or subcontractor engaged in the building construction industry, and (2) Plaintiffs did not plead the existence of unpaid "laborers, subcontractors, and materialmen," as M.C.L. § 570.151 requires. This defense was rejected in *Trafco*, wherein the Michigan Court of Appeals held that:

A.    the Act "serves to protect not only those hired by a general contractor to perform work or supply materials but also those who make payment to a general contractor;"

B.    "money held in an account by a contractor as trustee pursuant to the [A]ct is not property of the contractor subject to setoff by the contractor's bank-lender;" and

C.    "a bank [is not entitled] to retain monies [that the bank] set off which are later shown to constitute trust funds under the [A]ct."

*Trafco*, 142 Mich.App. at 354-55.

Accordingly, for the reasons set forth above, Defendant's Motion to Dismiss is denied with respect to Count I.

## B.    Lender Liability Claim

Defendant contends that Plaintiffs' claim for "lender liability" fails as a matter of law because Plaintiffs do not allege the existence of a lending relationship between Plaintiffs and Defendant, a necessary element for a lender liability claim. Plaintiffs do not contest the absence of a lending relationship between the parties. Instead, Plaintiffs' contend that Count II states a claim for piercing the corporate veil because Defendant is the alter-ego of MSW. As the Michigan Court of Appeals recently held, "piercing the corporate veil is not itself an independent cause of action, but rather, it is [a] means of imposing liability on an underlying cause of action." *Kostopoulos v. Crimmins*, Dkt. No. 299478 (Mich.Ct.App. December 29, 2011). In this case, there is no underlying cause of action upon which piercing the corporate veil would be relevant because: (1) the pleadings

lack allegations to satisfy the necessary elements of a lender liability claim against anyone (Count II),[2] and (2) Counts I and III involve direct claims against Defendant.

Accordingly, the Court concludes that Plaintiffs' lender liability claim fails as a matter of law and grants Defendant's Motion to Dismiss with respect to Count II.

## C.     Tortious Interference Claims

Defendant argues that Plaintiffs' claim for tortious interference is barred by a three-year statute of limitation. *See* M.C.L. § 600.5805(10); *Wilkerson v. Carlo*, 101 Mich.App. 629, 634 (1980). The Court agrees, as Plaintiffs have alleged that the actions that form the basis of Defendant's tortious interference occurred from April to August 2008, yet this cause of action was not filed until December 23, 2011.

The Court also concludes that Plaintiffs' contention that the statute of limitations should be tolled pursuant to M.C.L. § 600.5855 has not been pled as required by Michigan law. Section 600.5855 expressly provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Thus, Section 600.5855 applies when "a party conceals the fact that the plaintiff has a cause of action[,]" *Sills v. Oakland Gen. Hosp.*, 220 Mich.App. 303, 310 (1997), and "[t]he acts or

---

[2]Plaintiffs fail to allege that there was any lending relationship between either of the Plaintiffs and MSW. Instead, Plaintiffs have alleged that the contracts between Plaintiffs and MSW were for services.

misrepresentations must be pleaded." *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968) (citing *Beaubien v. Beaubien*, 64 U.S. 190 (1859); and *Janiszewski v. Behrmann*, 345 Mich. 8 (1956)).

In this case, the Court finds that Plaintiffs have not pled how Defendant "committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery" by Plaintiffs. *Sills*, 220 Mich.App. at 310. *See also Bufalino*, 404 F.2d at 1028 (citing *UAW v. Woods*, 337 Mich. 8 (1953); *Draws v. Levin*, 332 Mich. 447 (1952); and *DeHaan v. Winter*, 258 Mich. 293 (1932). As such, the Court concludes that Section 600.5855 does not operate to toll the statute of limitations on Plaintiffs' tortious interference claim.

For those reasons, the Court grants Defendant's Motion to Dismiss with respect to Count III.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, the Court DENIES Defendant's Motion to Dismiss with respect to Count I and GRANTS Defendant's Motion to Dismiss as to Counts II and III.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  September 12, 2012

9

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 12, 2012.

S/Marie E. Verlinde
Case Manager
(810) 984-3290