## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PERINI/TOMPKINS JOINT VENTURE and
GILFORD CORPORATION,

                  Plaintiffs,                         CASE NO. 12-10234
                                                      HON. LAWRENCE P. ZATKOFF

v.

COMERICA BANK,

                  Defendant.
_____/


### OPINION AND ORDER

          AT A SESSION of said Court, held in the
          United States Courthouse, in the City of Port Huron,
          State of Michigan, on the 17th day of March, 2014

          PRESENT:    THE HONORABLE LAWRENCE P. ZATKOFF
                      UNITED STATES DISTRICT JUDGE

### I.  INTRODUCTION

          This matter is before the Court on the parties' cross-motions for summary judgment (Docket

#s 23 (Defendant) and 26 (Plaintiffs)).  The motions are fully briefed.  The Court finds that the facts

and legal arguments pertinent to the motions are adequately presented in the parties' papers, and the

decision process will not be aided by oral arguments.  Therefore, pursuant to E.D. Mich. Local R.

7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted by the parties,

without this Court entertaining oral arguments.  For the reasons that follow, the parties' cross-

motions for summary judgment are denied.

## II.  BACKGROUND

Plaintiffs, Perini/Tompkins Joint Venture ("Perini/Tompkins") and Gilford Corporation ("Gilford") are judgment creditors of non-party MSW-Morgan Group, LLC ("MSW") under two judgments they obtained in Maryland state court.  The two judgments arise "out of a contractor-subcontractor" relationship between Plaintiffs and MSW on Phase I (Perini/Tompkins was the contractor) and Phase II (Gilford was the contractor) of a hotel construction project for non-party Gaylord National Corporation ("Gaylord") in Oxon Hill, Maryland (the "Hotel Project").  MSW was a subcontractor to Perini/Tompkins on Phase I and a subcontractor to Gilford on Phase II.  The judgments were based on an Award of Arbitrator that provided that: (1) Perini/Tompkins was entitled to a sum of $3,476,322 from MSW, and (2) Gilford was entitled to a sum of $406,362 from MSW.  Those amounts were determined as follows:

For Phase I (Perini/Tompkins):

| | |
|---|---|
| Original Subcontract Amount | $2,800,000 |
| Agreed Change Orders | $1,700,000 |
| Extra Work (Claims awarded to MSW) | $1,888,000 |
| Adjusted Subcontract Amount | $6,388,421 |
| Credits (Backcharges Awarded to Perini/Tompkins) | ($1,476,230) |
| Net Subcontract Amount | $4,912,191 |
| Amount Paid to MSW | ($8,388,513) |
| Amount Awarded to Perini/Tompkins | $3,476,322 |

For Phase II (Gilford)

| | |
|---|---|
| Original Subcontract Amount | $4,835,000 |
| Agreed Change Orders | $1,844,203 |
| Extra Work (Claims awarded to MSW) | $2,707,041 |

| | |
|---|---|
| Adjusted Subcontract Amount | $9,386,244 |
| Credits (Backcharges Awarded to Gilford) | ($752,811) |
| Net Subcontract Amount | $8,633,433 |
| Amount Paid to MSW | ($9,039,795) |
| Amount Awarded to Gilford | $406,362 |

The Circuit Court for Prince George's County, Maryland confirmed the arbitration awards and granted judgments in favor of Perini/Tompkins and Gilford on March 8, 2011, and March 18, 2011, respectively. Plaintiffs domesticated those judgments in Oakland County Circuit Court on October 12, 2011.

Defendant was a secured lender to MSW, and Defendant held a security interest in all of MSW's assets. Neither Plaintiff had any relationship with Defendant.

In April 2008 and June 2008, Gaylord issued at least two checks to Perini/Tompkins and MSW. Perini/Tompkins then endorsed those checks to MSW. In addition, Gilford issued Plaintiffs at least two checks to MSW. MSW deposited all of these checks in its account with Defendant that ended in '349 ("the '349 account"). MSW made payments to Defendant in the amounts of: (1) $430,000 on April 30, 2008, (2) $580,000 on June 12, 2008, and (3) $300,000 on June 18, 2008. MSW also made payments on behalf of loans issued by Defendant to Simon Watt, LLC– a related company–and J. Michael Clapperton ("Clapperton")–one of MSW's principals. It is undisputed that neither Simon Watt, LLC nor Clapperton performed any work on the Hotel Project, and there is no language in the loans issued by Defendant to Simon Watt, LLC or Clapperton that references or identifies the Hotel Project (or any project of MSW), nor does either loan specify that the amount loaned was to be used to pay laborers, subcontractors, and/or materialmen of any kind, to say

nothing of laborers, subcontractors, and/or materialmen on the Hotel Project.

Plaintiffs apparently have been unable to recover their judgments against MSW.  In December 2011, Plaintiffs filed a three-count complaint in the Oakland County Circuit Court against Defendant, wherein they alleged: (1) violations of the Michigan Builder's Trust Fund Act, M.C.L. § 570.151 *et seq.* (the "Act") (Count I), (2) lender liability (Count II), and (3) tortious interference with Plaintiffs' contracts (Count III). Defendant removed the action to this Court and filed a motion to dismiss.  The Court granted Defendant's motion to dismiss as to Counts II and III.  Therefore, the only remaining count before the Court is Count I, and the only remaining issue is whether Defendant is liable to Plaintiffs under the Act.

### III.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other

4

materials in the record."  Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323.   The moving party discharges its burden by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV.  ANALYSIS

**A.      Claim Pursuant to the Act**

As this Court has previously noted, to establish a civil claim under the Act, Plaintiff must prove:

> (1)    MSW is a contractor or subcontractor engaged in the building construction industry,
>
> (2)    Plaintiffs paid MSW for labor or materials provided on a construction project,
>
> (3)    MSW retained or used those funds, or any part of those funds,
>
> (4)    for any purpose other than to first pay laborers, subcontractors, and materialmen, and

5

> (5)    the laborers, subcontractors, and materialmen were engaged by MSW to perform labor or furnish material for the specific project.

*DiPonio  Constr. Co. v Rosati Masonry Co*., 246 Mich.App. 43, 49 (2001).  If Plaintiff can show MSW violated the Act, Defendant would not be entitled to those funds it received from MSW that stemmed from payments MSW received from Plaintiffs on the Hotel Project that were not first used to pay MSW's laborers, subcontractors, and materialmen on the Hotel Project because such funds were not the property of MSW to transfer. *See, e.g., Trafco*, 142 Mich.App. 349, 354-55 (1985) ("We conclude that money held in an account by a contractor as trustee pursuant to the [A]ct is not property of the contractor subject to setoff by the contractor's bank-lender. ... the bank's lack of knowledge as to the true ownership of the monies set off is not a defense ... [and] should it subsequently be established that money set off belonged to another and was not property of the bank's depositor-debtor, the bank is not entitled to retain it"). *See also National Bank of Detroit v. Eames & Brown, Inc.*, 396 Mich. 611, 621 (1976); *Bishop Distr. Co. v. Safeco Title Ins. Co.*, 130 Mich.App. 791, 795 (1983).

Based on the arguments and evidence produced by the parties with respect to the pending motions, the Court finds that Plaintiffs have produced evidence to support all five *DiPonio* elements. As to the first element, it is undisputed that MSW is a subcontractor engaged in the building construction industry.  As to the second element, there is sufficient evidence that Plaintiffs paid MSW (*i.e.*, the checks endorsed to MSW by Pertini/Tompkins and the checks Gilford made payable to MSW) for the purpose of paying "laborers, subcontractors, and/or materialmen" who performed work on–or provided materials for–the Hotel Project.  Whether such payments were for punchlist items, work previously performed or materials previously provided on the Hotel Project is not significant; rather, what is significant is whether MSW's laborers, subcontractors, and/or

6

materialmen performed work on the Hotel Project for which they were not fully paid by MSW. As it relates to this lawsuit, the following payments to MSW (hereinafter, "the Relevant Payments") have been deemed relevant:

A.   On April 24, 2008, Gaylord issued a check (No. 55129027) in the amount of $498,888.00, made payable to Perini/Tompkins Joint Venture and MSW, which check was then endorsed over to MSW by Perini/Tompkins.

B.   On April 25, 2008, Gilford issued a check (No. 42735) in the amount of $1,567,218.60, made payable to MSW.

C.   On June 6, 2008, Gaylord issued a check (No. 55138663) in the amount of $1,140,267.00, made payable to Perini/Tompkins and MSW, which check was then endorsed over to MSW by Perini/Tompkins.

D.   On June 16, 2008, Gilford issued a check (No. 42920) in the amount of $550,000.00, made payable to MSW.

As to the third element, there is ample evidence that MSW retained the funds from the Relevant Payments when MSW deposited all of the Relevant Payments into the '349 account. More specifically,

(1)   On April 28, 2008, MSW deposited: (a) the joint check from Gaylord (No. 55129027) in the amount of $498,888.00, made payable to Perini/Tompkins and MSW, and (b) the check from Gilford (No. 42735) in the amount of $1,567,218.60;

(2)   On June 10, 2008, MSW deposited the joint check from Gaylord (No. 55138663) in the amount of $1,140,267.00, made payable to Perini/Tompkins and MSW; and

(3)     On June 18, 2008, MSW deposited the check from Gilford (No. 42920) in the amount of $550,000.00.

As to the fourth and fifth elements, there is evidence that MSW did not use the funds (or all of the funds) to first pay laborers, subcontractors, or materialmen that MSW engaged to perform work or provide material on the Hotel Project.  Rather, it is undisputed that within two days of MSW depositing the Relevant Payments, MSW made payments to Defendant (among others, including MSW's related entity, Simon Watt, LLC, and MSW's principal, Clapperton).  Specifically, MSW electronically transferred from the '349 account to Defendant: (1) $430,000.00 on April 30, 2008, (2) $580,000 on June 12, 2008, and (3) $300,000.00 on June 19, 2008.

Although the three electronic transfers from the '349 account to Defendant are not, in and of themselves, improper or in violation of the Act, such transfers would violate the Act if MSW's laborers, subcontractors, and/or materialmen on the Hotel Project had not been paid.  The Court finds that Plaintiffs have produced evidence that, at the times MSW made the above-described electronic transfers to Defendant, MSW had not paid off at least some of its laborers, subcontractors, and/or materialmen on the Hotel Project, thus satisfying the fifth element.  For example, Plaintiffs produced evidence showing that the following payments ultimately were made to MSW's laborers, subcontractors, and/or materialmen by Plaintiffs, not MSW: (a) a payment to JM Construction of $75,000 to settle a claimed debt of $102,000, and (b) a payment of $107,500 to settle a Federal Labor Standards Act claim filed by MSW's workers.  Plaintiffs have also produced evidence of payments: (1) for Owner Controlled Insurance Program ("OCIP") costs of $103,604 made by Perini/Tompkins with respect to Phase I, and (2) a payment for OCIP costs of $180,495 made by Gilford with respect to Phase II, though it is unclear whether the OCIP payments were to or for

8

"laborers, subcontractors, and/or materialmen."

The Court also notes that the Award of Arbitrator reflects that MSW owed: (a) Perini/Tompkins "Credits (Backcharges Awarded to [Perini/Tompkins])" of $1,476,230.00 on Phase I, and (b) Gilford "Credits (Backcharges Awarded to [Gilford])" of $752,811.00 on Phase I. In fact, MSW admitted in its filings before the Arbitrator that it owed backcharges of $39,925.00 to Perini/Tompkins on Phase I and $18,734.00 on Phase II. The parties disagree what "backcharges" mean or include, but Plaintiffs' position is that they include monies owed to laborers, subcontractors, and materialmen for work on the Hotel Project; this is a factual dispute to be resolved at trial. Finally, Plaintiffs have produced a document that was submitted by MSW at the Arbitration that reveals that, as of end of April 2008, MSW owed (and continued to owe as of July 21, 2008) $543,391.42 to its laborers, subcontractors, and materialmen on the Hotel Project.

As the Court finds that Plaintiffs have produced evidence to satisfy each of the five *DiPonio* elements, the Court must deny Defendant's motion for summary judgment insofar as Defendant argues that Plaintiff cannot prove the necessary elements of a claim for violation of the Act. The Court also finds, however, that there is a genuine dispute as to material fact regarding the fourth and fifth *DiPonio* elements. First, although Plaintiffs have produced evidence that Perini/Tompkins paid a settlement of $75,000 to JM Construction and $107,500 for a Federal Labor Standards Act claim filed by MSW's workers, those are the only two undisputed payments that were clearly to "laborers, subcontractors, and/or materialmen." As noted above, it is unclear why the OCIP payments were made or whether they related to laborers, subcontractors, and/or materialmen. Second, although Plaintiffs have produced a document submitted by MSW at the Arbitration that reveals MSW owed $543,391.42 to its laborers, subcontractors, and materialmen on the Hotel Project as of the end of

9

April 2008, it appears that figure includes money owed to JM Construction. As such, it is unclear whether the amount owed to JM Construction in that document was the same for the same matter that Perini/Tompkins paid $75,000 to JM Construction to settle the $102,000 debt claim noted above. Third, the amounts, if any, that MSW had failed to pay its laborers, subcontractors, and materialmen on the Hotel Project as of the time MSW made each of the April 30, June 12, and June 18, 2008, electronic transfers to Defendant are unclear. In fact, even if MSW owed its laborers, subcontractors, and materialmen payments on the Hotel Project at the time(s) MSW made the electronic transfers to Defendant, the amount owed to such laborers, subcontractors, and/or materialmen may be significantly less than the $1,310,000 in electronic transfers Plaintiffs challenge in this lawsuit.

Importantly, notwithstanding how much MSW may owe Plaintiffs and how much MSW may have paid Defendant (whether it is $1,310,000 in electronic transfers or the much larger amounts Plaintiffs alleged when filing this lawsuit), the only remaining claim before this Court is for an alleged violation of the Act – and any recovery must be tied to and limited to the amounts, if any, MSW owed to its laborers, subcontractors and materialmen on the Hotel Project at the time the electronic transfers were made to Defendant. Therefore, for the reasons discussed above, even if Plaintiffs can prove MSW violated the Act, the amount Plaintiffs would be entitled to "get back" from Defendant would be limited to the amounts MSW owed to its laborers, subcontractors and materialmen on the Hotel Project at the time the electronic transfers were made to Defendant.

Therefore, for the reasons set forth above, Plaintiffs' motion for summary judgment is denied.

## B.      Defendant's Secured Creditor Status

Defendant asserts that it has priority as a secured creditor over Plaintiffs' claims and, as such, it is irrelevant if Plaintiffs have a viable claim under the Act.  According to Defendant, it is undisputed that: (1) Defendant is a secured creditor of MSW in all of MSW's assets, including MSW's accounts receivable, and (2) MSW guaranteed the Simon Watt Loan and the Clapperton Loan.  Based on declarations of a member of MSW and a former assistant vice president of Defendant and vice president of Defendant, Defendant also claims it cannot be disputed that: (a) Defendant "made various loan advances that were far in excess of the payments it received in April and June 2008 on the Simon Watt Loan and the Clapperton Loan during 2008, nor that those payments were used to fund MSW's work on the Hotel [Project]."  Defendant relies on a Michigan Supreme Court case, *National Bank of Detroit v. Eames & Brown, Inc.*, 396 Mich. 611 (1976), to support its argument.

The Court first notes that Defendant overlooks the rule set forth by the *NBD* court that "because the building contract fund is held by the general contractor in a trustee capacity for the benefit of others, the general contractor does not have an assignable interest in that fund and the fund is, therefore, never part of the general contractor's assets subject to a general security interest." *Bishop Distr. Co. v. Safeco Title Ins. Co.*, 130 Mich.App. 791, 795 (1983); *NBD*, 396 Mich. at 621. *See also Trafco, supra*.  Nonetheless, Defendant accurately argues that the Michigan Supreme Court then created an exception to the general rule that security interests are unenforceable against the builders trust fund:

> If the money provided by the secured creditor was in fact used to pay laborers, subcontractors, or materialmen on the specific job in question, the purpose of the Act is carried out.  To that extent, there is no reason why a secured creditor should not have the right to the accounts receivable of the contractor.
>
> It is entirely consonant with the purposes of the Act to assign a specific

11

account receivable, arising out of a particular improvement, to a lender to raise money to pay "laborers, subcontractors and materialmen, engaged by (the contractor) to perform labor or furnish material for the specific improvement." M.C.L.A. § 570.152; M.S.A. § 26.332. The burden of proving that any or all of the funds provided were in fact used to pay laborers, subcontractors and materialmen on this project rests on the secured party. To the extent that the lender fails to satisfy this burden of proof, the laborers, subcontractors and materialmen prevail and have the superior right to the fund; if the lender satisfies the burden of proof, its perfected security interest is superior.

In this case the security interest was created by a general continuing assignment covering all present and future accounts. In such a case the money may be loaned before the account receivable begins to be created. If the lender in this case in fact loaned money which was used to pay for labor and material for the specific improvement here involved in an amount at least as large as the amount of the accounts receivable, there would be no diversion to 'any other purpose.'

A security interest created by a general, continuing assignment should be regarded as valid at least to the extent that it does not exceed the amount of money lent by the secured party actually used in creating the specific improvement.

*Id.* at 622-23.

This case presents factual circumstances similar to those set forth in *NBD*. It is undisputed that Defendant has a security interest in all of MSW's assets, but it is unclear from the record that Defendant used the money paid to it by MSW (the $1,310,000 currently at issue) to pay MSW's laborers, subcontractors, or materialmen on the Hotel Project. To date, the only "evidence" that the funds Defendant received from MSW were used to pay laborers, subcontractors, or materialmen on the Hotel Project were declarations submitted from persons associated with MSW and Defendant. Moreover, Defendant argues, and the declarations suggest, that Defendant advanced funds on the Simon Watt loan and the Clapperton loan during 2008 that were: (a) used on the Hotel Project, and (b) partially repaid through MSW's loan payments to Defendant. Defendant does not, however, provide any authority for the proposition that Defendant's advancement of funds to entities owned by MSW, but who did no work on the Hotel Project, somehow demonstrates that Defendant used

12

the money paid to it by MSW to pay MSW's laborers, subcontractors, or materialmen on the Hotel Project such that Defendant falls within the exception to the general rule that security interests are unenforceable against the builders trust fund.

More importantly, Defendant has not produced any financial documents (checks, records of electronic transfers, etc.) to show that the funds that MSW paid to Defendant were used by Defendant to directly or indirectly pay MSW's laborers, subcontractors, or materialmen on the Hotel Project. It is undisputed, however, that funds from the Relevant Payments were used to pay not only Defendant for the loan(s) directly from Defendant to MSW but also to pay down loans Defendant extended to Simon Watt, LLC and Clapperton (neither of whom contracted to do any work on the Hotel Project). Therefore, like the *NBD* court, this Court must conclude that:

> From the facts before [the Court], [the Court] cannot determine . . . whether any or all of the money provided by [Defendant] was actually used to pay laborers, subcontractors and materialmen on [the Hotel Project]. Those facts must be determined at trial.

*Id.* at 623. Accordingly, Defendant's motion for summary judgment on the basis of being a secured creditor of MSW is denied.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, the Court DENIES the motion for summary judgment filed by Defendant (Docket #23) and DENIES the motion for summary judgment filed by Plaintiffs (Docket #26).

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: March 17, 2014